UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

Present: The Honorable      JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:**       **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION (DKT. 32)**

JS-6: Remanded

I. **Introduction**

On October 11, 2011, Connie Dietrich ("Plaintiff," or "Connie"[1]) brought this action in the Los Angeles Superior Court. Dkt. 1-1 at 10. The Complaint names the following defendants: Autozone West, Inc. ("Autozone"); Borgwarner Morse TEC LLC ("Borgwarner"); Honeywell International Inc. ("Honeywell"); Kelly-Moore Paint Company, Inc. ("Kelly-Moore"); Masoneilan International Inc. ("Masoneilan"); Metalclad Insulation LLC ("Metalclad"); Owens-Illinois, Inc. ("Owens"); Soco West, Inc. ("Soco"); The Boeing Company ("Boeing")[2]; The Pep Boys -- Manny, Moe & Jack of California ("Pep Boys"); Union Carbide Corporation ("Union Carbide"); and Western Auto Supply Company ("Western Auto") (collectively, "Defendants"). *Id.* at 10-11. The Complaint advances four causes of action: (i) negligence; (ii) breach of express and implied warranties; (iii) strict liability; and (iv) premises owner/contractor liability. *Id.* at 10. The claims arise out of Plaintiff's alleged exposure to asbestos at home and through take-home exposure due to the work of her husband, Paul Dietrich ("Paul"), and her father, Melvin Beachler ("Beachler"). *Id.* ¶ 7.

Trial was set to commence in the Superior Court on July 15, 2019. Dkt. 32 at 6. On May 16, 2019, Boeing removed the action pursuant to 28 U.S.C. § 1442. Dkt. 1 at 16. On June 14, 2019, Plaintiff filed a Motion to Remand for Lack of Subject Matter Jurisdiction (the "Motion"). Dkt. 32. Boeing filed an opposition on July 2, 2019. Dkt. 35. Plaintiff filed a reply on July 19, 2019. Dkt. 40.

A hearing on the Motion was conducted on September 16, 2019, and the matter was then taken under submission. Dkt. 44. For the reasons stated in this Order, the Motion is **GRANTED**, and the action is **REMANDED** to the Los Angeles Superior Court. Plaintiff is also awarded $3500 in costs and attorney's

---

[1] The use of first names to identify those with common surnames follows a common practice that is designed to facilitate the discussion in this Order. No disrespect is intended by the use of this common convention.
[2] Sued individually and as successor by merger to McDonnell Douglas Aircraft Company, successor by merger with Douglas Aircraft Company. *Id.* The allegations at issue here relate principally to Douglas Aircraft Company.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

fees in connection with these proceedings.


## II. Factual Background

The Complaint alleges that Plaintiff was exposed to products manufactured by the Defendants that contained asbestos. Dkt. 1-1 ¶ 7. It also alleges that she had such exposure because her husband and father were exposed to asbestos while working for one or more of the Defendants, and brought fibers home on their clothing. *Id.* ¶¶ 7, 12. At relevant times during the employment of Paul and Beachler, Plaintiff allegedly "would launder and/or shake out her own clothing and the clothing of her father and husband, sweep[] and/or clean[] the laundry room and house, among other activities involving dust, and would ride in and/or clean the family automobiles," thus "disturb[ing] the asbestos dust that had settled" thereon and breathing it in. *Id.* ¶ 8. In June 2018, Plaintiff was allegedly diagnosed with mesothelioma, a lung disease "caused by cumulative inhalation of asbestos fibers." *Id.* ¶¶ 9-10.

The Complaint alleges that Plaintiff, Paul and Beachler "entered, performed work and was [*sic*] otherwise on or about . . . premises" which were owned, managed, contracted to or controlled by certain companies, including Boeing, where "asbestos and asbestos-containing products were fabricated, used, repaired, or disturbed." *Id.* ¶¶ 53-54. Each company allegedly failed to control asbestos use, warn workers about asbestos, or implement adequate safety measures against asbestos exposure. *Id.* ¶¶ 55-58. As a result, Plaintiff was allegedly "exposed to dangerous quantities of asbestos dust, debris, fiber and particulate." *Id.* ¶ 81.

A "Preliminary Fact Sheet," was filed with the Complaint. It alleged that the claims against Boeing relate to "premises take home" exposures between 1948 and 1979, and that these exposures occurred in Lakewood and Long Beach, California. *Id.* at 37-40.


## III. Analysis

### A. Legal Standards

#### 1. Removal and Remand

A motion to remand is the procedural means to challenge the removal of an action. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). A state civil action may be removed only if, at the time of removal, it is one over which there is federal jurisdiction. 28 U.S.C. § 1441(a). The removing party has the burden of establishing that removal is proper, including that there is federal jurisdiction over one or more of the claims. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "If a case is improperly removed, the federal court must remand the action because it has no subject matter jurisdiction to decide the case." *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000) (internal citations omitted).

#### 2. Federal Officer Removal Statute and Federal Contractor Defense

A civil case "commenced in a State court against . . . [t]he United States or any agency thereof or any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-04291 JAK (PJWx) | | Date | October 28, 2019 |
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | | |

officer (or person acting under that officer) of the United States or of any agency thereof" may be removed. 28 U.S.C. § 1442(a)(1). The party removing under the statute must show each of the following: (i) it acted under the direction of a federal officer; (ii) there is causal nexus between those acts and plaintiff's claims; and (iii) it has a colorable federal defense to the plaintiff's claims. *Mesa v. California*, 489 U.S. 121, 124-25, 131, 139 (1989). The federal officer removal statute was enacted to protect federal tariffs from state nullification. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). Consequently, the Supreme Court has concluded that removal under the statute "should not be frustrated by a narrow, grudging interpretation." *Id.* (quoting *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)).

Furthermore, "§ 1442 represents an exception to the general rule . . . that all defendants must join in the removal petition. Since the federal officer is the only one entitled to remove under § 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court." *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).

> 3. Timeliness of Removal

"[A] notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(2)-(3). "The federal courts have given the reference to "other paper" an expansive construction and have included a wide array of documents within its scope," in order to "interpret the statute in keeping with its intended purpose of assuring that a defendant has an opportunity to assert the Congressionally bestowed right to remove upon receiving notice that the right exists in a particular case." 14C Fed. Prac. & Proc. Juris. § 3731 (Rev. 4th ed.) (collecting cases). Such "papers" may include deposition transcripts, *Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010), and answers to interrogatories, *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035-36 (10th Cir. 1998).

"Where the timeliness of a federal officer's removal is at issue, we extend section 1442's liberal interpretation to section 1446." *Durham*, 445 F.3d at 1252-53 (citing Federal Courts Improvement Act of 1996, Pub. L. No. 104-317 § 206, 110 Stat. 3847, 3850; *Manypenny*, 451 U.S. at 242; *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 76, 79 n.5 (1991). Thus, this Circuit has held that the 30 day clock for removing an action on federal officer grounds runs independently of the 30 day clock for removal on other grounds; *i.e.*, "a federal officer defendant's thirty days to remove commence when the plaintiff discloses sufficient facts for federal officer removal, even if the officer was previously aware of a different basis for removal." *Id.* at 1253.

> B. Application

> 1. Timeliness of Removal

Plaintiff argues that Boeing's removal was untimely, thereby warranting its remand. Dkt. 32 at 6. Thus, Plaintiff contends that since November 2018, Boeing has had substantial evidence from which it could have been, and was, ascertained that there were grounds for removal, but that it did not do so until May 16, 2019. *Id.* Plaintiff adds that this was less than two months prior to the trial date that had been set in

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

the Superior Court. *Id.*

"After a defendant learns that an action is removable, he has thirty days to remove the case to federal court." *Durham*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)). "Section 1446(b)'s 'time limit is mandatory [such that] a timely objection to a late petition will defeat removal.'" *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1142 n.4 (9th Cir. 2013) (quoting *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir.1980) (per curiam)). In determining when the 30-day period starts, "the Ninth Circuit 'has endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any summary-judgment type evidence.'" *Zamora v. Lowe's Home Centers, Inc.*, No. C -14-02143-EDL, 2014 WL 12647740, at *1 (N.D. Cal. July 11, 2014) (quoting *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)). A preponderance of the evidence standard applies to these determinations. *Matheson*, 319 F.3d at 1090.

For federal officer removal, notice must be based on facts sufficient "to support each of the three requirements" of removal, *i.e.*, that (i) "it is a 'person' within the meaning of the statute;" (ii) "there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims;" and (iii) "it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251 (citing *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999)).

  a) Facts Regarding the Ascertainability of Grounds for Removal

  (1) Notice of Removal

The Notice of Removal states that Boeing originally considered the claims asserted by Plaintiff to be "limited . . . exclusively to take home exposures . . . arising out of Mr. Dietrich's employment at a Douglas Aircraft facility in Long Beach, California;" *i.e.*, after Paul's military service had concluded. Dkt. 1 at 14. It contends that the grounds for removal pursuant to a government contractor defense came to light during discovery. *Id.* at 14-15. Specifically, Boeing contends that certain of Plaintiff's discovery responses, "served on April 19, 2019, now reveal that Plaintiff is indeed making a claim of exposure arising out Paul Dietrich's military service," but that "there was no indication prior to April 19, 2019 that Plaintiff ever intended to amend and augment her own take home claims of exposure against Boeing to include" such exposures. *Id.* at 15.

In the April 19, 2019 discovery response to which Boeing refers, Plaintiff stated that she was exposed to asbestos due to her husbands' work on "BOEING's aircraft, and the original and replacement parts and/or materials supplied/purchased by Defendant BOEING, during Mr. DIETRICH's time in the United States Marine Core [*sic*] working as an airplane mechanic from 1948-1957," as well as "[f]ollowing his service," when he "continued to service BOEING aircraft at Douglas Aircraft Company." Dkt. 1-6 at 5. Plaintiff also stated in the discovery response that, while Paul was in the Marine Corps:

> the aforementioned work was performed on various asbestos containing military aircraft designed, manufactured, sold, supplied, distributed and otherwise marketed with original and replacement asbestos-containing brakes, brake systems, brake shoes, brake linings, clutches, clutch systems, clutch linings, engines/motors, exhaust systems, gaskets and seals with, in, and/or on various military wheeled vehicles, and many, if not all, variants, upgrades, and changes resulting in subsequent model number and/or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
| --- | --- | --- | --- |
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

designation or derivative changes.

*Id.* at 6.

(2) "Other Papers"

(a) November 8, 2018: Plaintiff's Responses to Standard Interrogatories

Plaintiff's Responses to Standard Interrogatories were served on Boeing on November 8, 2018. Dkt. 32 at 6. Exhibit A to them is a "Work History." Dkt. 1-13 at 2. It states that the "product at issue" as to the claims against Boeing is "[a]viation product / premises take home," incurred between 1948 and 1979 as the result of "[a]viation manufacture/repair by Connie's husband, Paul Dietrich," which occurred in Lakewood and Long Beach, California. *Id.* at 84. The Work History also includes a general explanation of the take-home allegations with respect to Paul's aviation work:

> From 1948 to 1957, Mr. Dietrich worked as an aircraft mechanic in the United States Marine Corps, including inside aircraft engines to perform repairs that would have involved wiring and firewalls. He was first stationed at Hickam AFB in Hawaii and then at El Toro Air Station in California. After he left the service, Mr. Dietrich performed the same type of work for Douglas Aircraft in Long Beach, CA. . . . Throughout their marriage, Connie Dietrich shook out and washed her husband's work clothes once a week. Paul's clothing also contaminated the family home and vehicles.

*Id.* at 85-86.

(b) November 15, 2018: Boeing's Assertion of Defenses

On November 15, 2018, Boeing filed its answer to the Complaint. Dkt. 32-2. It asserted government contractor and sovereign immunity defenses:

> 39. Any products manufactured by Boeing that incorporated asbestos-containing materials alleged to have been a cause of, or to have contributed to, any disease contracted by Plaintiff, were manufactured in, under, and in conformity with the direction and control of the United States Government, which at all times material hereto had knowledge superior to that of Boeing with respect to the potential hazards of asbestos products; accordingly, no liability can be imposed upon Boeing.
>
> 40. Insofar as any of Plaintiff's claims against Boeing involves any military products or equipment it manufactured or supplied to the U.S. Government, Boeing asserts that such claims are barred by the doctrine known as the "Government Contractor Defense" adopted by the United States Supreme Court in the case of *Boyle v. United Technologies Corp.*, 108 S. Ct. 2510 (1988).
>
> 41. Insofar as any of Plaintiff's claims against Boeing involves any military products or equipment it manufactured or supplied to the U.S. Government, Boeing asserts that any

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

military products made or supplied by Boeing were procured by the United States Government, which was sophisticated and knowledgeable concerning the use of and any potential hazards of asbestos products. Boeing reasonably relied upon the sophistication of the United States Government and is not responsible for any failure of the United States Government to warn or take proper precautions for the protection of its own employees or civil servants, including Plaintiff, Paul Dietrich, and/or Melvin Beachler.

42. Insofar as any of Plaintiff's claims against Boeing involves any military products or equipment it manufactured or supplied to the U.S. Government, Boeing asserts that any products manufactured or supplied by Boeing which incorporated asbestos-containing materials alleged to have been a cause of any disease contracted by Plaintiff were manufactured under and in conformity with the direction and control of the United States Government, which at all times material hereto had knowledge superior to that of Boeing with respect to the potential hazards of asbestos products; accordingly, no liability can be imposed upon Boeing.

43. Insofar as any of Plaintiff's claims against Boeing involves any military products or equipment it manufactured or supplied to the U.S. Government, Boeing asserts that Boeing satisfied any duty to warn by providing the United States Government with detailed specifications of each and every one of its products to which Plaintiff was allegedly exposed.

44. Insofar as any of Plaintiff's claims against Boeing involves any military products or equipment it manufactured or supplied to the U.S. Government, Boeing asserts that Plaintiff's claims are barred by the derivative sovereign immunity defense doctrine under *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940).

*Id.* at 9-11.

(c)    November 30, 2018: Service of Military Records

On November 30, 2018, through discovery Boeing was provided with copies of Paul's military records. Dkt. 1-2 at 2. These records include, *inter alia*, statements as to the following: Paul resided in Long Beach at the time of his enlistment and discharge; he was married to Plaintiff during his service; he served on bases in California and in Hawaii; and his service included extensive work as a mechanic certified to work on Douglas military aircraft, including the R4D-6 and R4D-8. Dkt. 1-2 at 28, 31-32.

(d)    December 13-21, 2018: Deposition of Plaintiff

Plaintiff's deposition was taken between December 13 and 21, 2018. Dkt. 32 at 8. The deposition transcript reflects extensive colloquies between Plaintiff, Boeing's counsel, and Plaintiff's counsel regarding any exposure of Plaintiff and Paul to asbestos, as well as Paul's work on military aircraft manufactured by Douglas while he was on active duty in the Marines:

Q [Plaintiff's Counsel]: Your husband was a Marine, ma'am?

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

A: Yes, he was. . . .
Q: Was he in when you married him?
A: Yes.
Q: He was already in?
A: Yes. . . . he was in the air wing.
Q: So when you married him, was he doing anything different or was he still a mechanic?
A: He was a mechanic.

Dkt. 32-4 at 10-12.

Q [Plaintiff's Counsel]: Did your husband work on airplanes, ma'am?
[Boeing objections]
A: Yes, he did. . . .
Q: Do you remember then that your husband worked on jets?
A: Yes.

*Id.* at 14, 16.

Q [Plaintiff's Counsel]: The question is do you know, when he was a mechanic working on these planes as a Marine, what he did in the planes?
[Boeing objections]
A: . . . . Yes, engines. He worked on the engines, on whatever part that needed fixed.
[Boeing objections]
Q: . . . . Do you recognize the pictures in Exhibit 6?
A: Yes, I do.
Q: What are they pictures of?
[Boeing objections]
A: His airplanes that he flew in and worked on.

*Id.* at 18-19.

Q [Boeing's Counsel]: Now, when you first went on a date with Paul, where was he stationed?
A: In El Toro. . . .
Q: Okay. El Toro -- is it a --
A: Marine Corps base.
Q: Marine Corps base. Okay. Now, do you know -- I'm going to ask you some questions about your husband's Marine Corps service. . . .
Q: You were married in June of '53. How long were the two of you dating before you got married?
A: I was -- probably three years, two -- two and a half. . . .
Q: Now, from when you started dating him, was he at El Toro?
A: Yes. . . .
Q [Boeing's Counsel]: So during the course of his service in the Marine Corps, while the two of you were married, you recall him going to El Toro and the place in San Diego?

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
| --- | --- | --- | --- |
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

A: Yes.
Q: Anywhere else?
A: No. I mean they would send him a lot of times to Florida and different – actually he went overseas a few times, different places where he was -- you know, where they needed his -- what he did. I'm not even sure what that all was.
Q: I know. I know. But here's what I'm trying to get from you: If you know, do you know how long your husband was stationed at El Toro after the two of you were married?
A: No. I mean he got transferred after a couple years, I think, after we married.
Q: Okay. So a couple of years at El Toro?
A: I believe it was. And then, yeah, then he got transferred to Hawaii. . . .
Q: So from the time you started dating your husband up until the time you guys moved to Hawaii, did you ever go see your husband at El Toro?
A: I was with him a few times, yeah, but I more or less sit in the car a lot . . . .
Q: Were you in the car on the base?
A: Yes.

*Id.* at 39, 41-43.

Q [Boeing's Counsel]: Do you have any information or knowledge that while your husband was in the Marine Corps, he had worked on or around any asbestos-containing aircraft components?
A: Yes, he did. . . .
Q: When did he tell you that? When he was sick?
A: I mean when he started getting sick, he says I just -- he used to say I wonder if it's the asbestos or whatever.
Q: Okay. Did he tell you specifically from El Toro?
A: No.
Q: Did he tell you from San Diego?
A: No. The -- jeez, right here. That -- I'm trying to -- what was it that -- I'm sorry. I'm not --
Q: My question was specifically about El Toro.
A: Well, no, not El Toro, no.

*Id.* at 48.

A: . . . [H]e would come home and he would say, 'I coughed my head off today with all this dusty,' you know, 'stuff we're working on,' or whatever he was into.
Q [Boeing's Counsel]: We're talking about Hawaii?
A: In --
Q: I'm just asking about Hawaii.
A: Well, right. Right. Hawaii too, yes.

*Id.* at 59-60.

Q [Plaintiff's Counsel]: Let's go down the bottom [a military service record]. It says, in the little box there, 'Satisfactorily completed 56 hours of instruction in Phase II AD

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

maintenance,' and then parenthesis, '(F4D-1) on 12 February, 1957.'[3] Do you see that, ma'am?
A: Yes.
Q: 12 February, 1957, you guys were married?"
A: Yes.
Q: Were you doing his laundry then?
A: Yes. . . .
Q: The F4D-1 -- that was a Douglas Skyray. Did you know that?
A: No, I didn't. . . .
A: Do you think it's fair to ask you questions about whether or not Paul worked on Douglas planes when he actually had 56 hours in the records we turned over showing him rated on a Douglas Skyray?
A: No.

*Id.* at 79-80.

Q [Plaintiff's Counsel]: That date there is 27 March '56, is that right?
A: Yes.
Q: Was that when you guys were in El Toro?
A: Yes, it was.
Q: And did you do Paul's laundry then?
A: Yes.
Q: It says here, 'Qualified as crew member on R4D6 and R4D8 type aircraft.' Do you see that?
A: Yes.
Q: Do you know what those are?
A: I have no idea.
Q: Did you ever hear Paul say 'Douglas Skytrain?'
[Boeing's Counsel objects]
A: No.
Q: Those are Douglas Skytrains.
[Further Boeing objections]

*Id.* at 81-82.

(e)     April 8-10, 2019: Deposition of Plaintiff's Children

Between April 8 and 10, 2019, depositions were taken of Plaintiff's children, Sherri Pope ("Pope") and Michael Dietrich ("Michael"). Dkt. 32 at 8-9. Both testified about their father's work:

Q [Plaintiff's Counsel]: Do you know whether or not your father ever worked on Douglas aircraft before he was employed by Douglas?
[Boeing's Counsel objects]
A [Pope]: I don't know if they were Douglas, but I know he was an airplane mechanic in

---

[3] Paul was again stationed at El Toro at this time. *See* Dkt. 1-2 at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

the Marines. . . .
Q: Are you telling us, ma'am, that there's an airplane that your father worked on that's sitting in a park somewhere? . . . .
A: Yes. . . . [photographic exhibits are introduced]
Q: Did you dad ever tell you whether or not that was a Douglas Aircraft Company F3D-2 Skynight fighter?
[Boeing's Counsel objects]

Dkt. 32-5 at 8-12.

Q [Plaintiff's Counsel]: And what are some of the aircraft that you learned that your dad worked on when he was in the flight wing as a mechanic?
[Boeing's Counsel objects]
A [Michael]: I found out later that my dad worked on the Douglas -- it was the F3 – I believe it was a Skynight . . . . And then I recently . . . found out that [another plane] was a military version of a DC-3 that he had hours in. The way he put it, I actually put a lot hours in that plane. . . .
Q: And when you say it looked like a DC-3, are you talking about an old tail dragger passenger plane? . . .
A: Yes.
Q: DC being a Douglas plane? . . .
A: Yes.
Q: Do you know where they built the DCs? . . .
A: Long Beach. . . .
Q: Do you have any connection -- your family, your father have any connection with the Long Beach Douglas plant where they built the DCs? . . .
A: I know he worked there.

Dkt. 32-6 at 10-11, 17-18.

> b)    Application of the Evidence

Boeing's position is that the 30-day clock for removing an action starts only when the information supporting removal is "unequivocally clear and certain." Dkt. 35 at 5, 8, 11 (citing *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1089–90 (C.D. Cal. 2005), *aff'd on other grounds,* 446 F.3d 1011 (9th Cir. 2006)). Thus, it argues that, although the Complaint and the November 8, 2018 Responses to Standard Interrogatories "might inform what Mr. Dietrich's own claims of direct exposure were," they do "not constitute clear and unequivocal information sufficient to put Boeing on notice that Plaintiff . . . intended to expand *her own* claims of exposure as to Boeing to include Mr. Dietrich's military service." Dkt. 35 at 8 (emphasis in original).[4]

The "unequivocally clear and certain" standard in *Mattel* was based on decisions by the Fifth Circuit and Tenth Circuit, and was applied in connection with an assessment of removals based on federal question and diversity. 441 F. Supp. 2d at 1090 (citing *Bosky v. Kroger Tex., LP.,* 288 F.3d 208, 211

---

[4] Paul died on April 27, 2018, which was prior to the filing of this action in the Superior Court. Dkt. 1-13 at 6.

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-04291 JAK (PJWx) | | Date | October 28, 2019 |
|---|---|---|---|---|
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | | |

(5th Cir. 2002); *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999)). The Ninth Circuit has not adopted an "unequivocally clear and certain" standard as to the start of the 30-day clock in any context. Instead, with respect to federal officer removal specifically, the rule is that the "thirty days to remove commences when the plaintiff discloses sufficient facts for federal officer removal." *Durham*, 445 F.3d 1247 at 1253; *see also Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (the "thirty-day window is in play" once an action is "rendered removable by virtue of . . . circumstance[s] revealed in a newly-filed 'paper.'").

Plaintiff does not disagree with Boeing that the face of the Complaint, which was filed on October 11, 2018, showed that Plaintiff asserted claims against Boeing for "premises take home" exposures that occurred in Lakewood and Long Beach, California between 1948 and 1979, and that this was not a sufficient, independent basis for federal officer removal. Dkt. 1 at 8; *see also* Dkt. 32 at 6; Dkt. 35 at 7. However, Boeing also argues that, in the Complaint and Plaintiff's Responses to Standard Interrogatories, "the only actual identification of Boeing, undeniably related to Plaintiff's premises claim, is the general statement that Mr. Dietrich worked for Douglas Aircraft in Long Beach, California; and . . . the only enumerated locations of exposure are Lakewood and Long Beach, California -- the cities where Plaintiff resided and allegedly suffered take-home exposures during Mr. Dietrich's non-military work history." Dkt. 35 at 8. Boeing contends that this requires interpreting the Complaint, Responses, and other papers prior to the April 19, 2019 discovery responses as excluding from Plaintiff's claim any exposure incurred during the period of Paul's military service; *i.e.*,1948-57. *Id.* at 5, 9-11. The basis for this contention is that Paul had also served part of that period in Hawaii. *Id.* at 9. Thus, Boeing's position hinges on the proposition that "if Mr. Dietrich's military service were truly at issue, there would have been a corresponding location of exposure also identified in Kaneohe, Hawaii, where they lived when Mr. Dietrich was stationed there." *Id.*

Boeing's position is not persuasive. Although the Complaint excluded Boeing from the strict liability claim, it did include Boeing within the definition of "Product Defendants," and each such defendant allegedly negligently manufactured or otherwise offered asbestos-containing products without providing warnings of their known dangers. Dkt. 1-1 ¶¶ 12-13, 18-24. Each also allegedly breached a warranty that their products were fit for their intended installation or use. *Id.* ¶ 35. These allegations provided some notice to Boeing that its products were at issue.

This notice was confirmed in the details of filings and deposition testimony that was provided to, and in the presence of, Boeing's counsel well in advance of April 16, 2019, *i.e.*, 30 days prior to removal. By November 8, 2018, Boeing had been informed that Plaintiff sought to impose, specifically as to Boeing, "[a]viation product / premises take home" liability for injuries Plaintiff "incurred between 1948 and 1979" as the result of "[a]viation manufacture/repair by Connie's husband" in Lakewood and Long Beach, California. It was also informed that for the first nine years of that period, Paul was a Marine Corps aircraft mechanic stationed at various bases, including El Toro Air Station, which is near Lakewood and Long Beach. Dkt. 1-13 at 84-85; Dkt. 32 at 11. Further, on November 30, 2018, Boeing received Paul's military records. Dkt. 32 at 7-8. They showed that he had listed Long Beach as his residence both when he enlisted and when he was discharged, and that during his service he worked extensively as a mechanic on specific Douglas aircraft, including while stationed at El Toro. Dkt. 1-2 at 31-32; Dkt. 32 at 7-8. A few weeks later, during depositions in December 2018, Boeing established that Paul had been stationed at El Toro at the time of his marriage in 1953 (Dkt. 32-4 at 41), that thereafter Paul and Plaintiff resided in Long Beach or in Hawaii, and that Plaintiff had washed Paul's uniforms while they

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

lived in El Toro. Dkt. 32-4 at 41, 44-45, 49, 81. Boeing also confirmed that, during Paul's service, while he was married to Plaintiff and stationed at El Toro, Paul had worked on Douglas military airplanes. *Id.* at 78-82. Finally, no later than April 10, 2019, Boeing again confirmed, through the depositions of Plaintiff's children, that their father had spent considerable time servicing Douglas-built military aircraft while he was on active duty. *E.g.*, Dkt. 32-6 at 10-11, 18.

This substantial body of evidence rebuts Boeing's argument that, although Paul's military records had established -- on November 30, 2018 -- that Paul had worked on Douglas aircraft while serving in the Marines, "there was no indication via production of these records of Plaintiff's intent to expand her 'premises take home' claims against Boeing to include her own asbestos exposure from Mr. Dietrich's military service." Dkt. 35 at 9. Boeing's counsel explored Paul's service at length during the depositions, including as to the type of work he did, where he did it, and whether it involved asbestos-containing airplane parts. *See* Dkt. 32-4 at 48 ("Q [Boeing's Counsel]: Do you have any information or knowledge that while your husband was in the Marine Corps, he had worked on or around any asbestos-containing aircraft components? A: Yes, he did."). This evidence contradicts Boeing's argument that none of the depositions "provided any testimony rising above hearsay and speculation regarding potential asbestos exposures from Mr. Dietrich's military service, and none provided any testimony about Plaintiff's exposures to asbestos from military aircraft," as well as Boeing's contention that only the filings on April 19, 2019 "for the first time alleged that Plaintiff was exposed to asbestos as a result of Paul Dietrich's exposure to Boeing aircraft during his time in the U.S. Marine Corps as an airplane mechanic." Dkt. 35 at 9-10.

As to Boeing's argument that any take-home claim relating to Paul's Marine service would necessarily have identified Plaintiff's Hawaii residence as where she was exposed, and not just her California home, this is not supported by the evidence. Apart from a period in late 1953 and early 1954, Paul's military records are not express as to the dates when he and Plaintiff lived in Hawaii. *See* Dkt. 1-2 at 60. They do establish, however, that Paul was serving at El Toro between 1955 and 1957, the period which includes the dates on which Paul is specifically recorded as having booked time as a mechanic on Douglas-built planes. *Id.* at 14, 18, 19, 31-33. Although this is not dispositive as to Paul's having been exposed to asbestos on Douglas aircraft in Hawaii, it provides a reasonable explanation -- other than the lack of a Douglas plant in Hawaii, as Boeing has argued -- as to why Plaintiff alleged exposure only in California.

Boeing relies on *Karambelas v. Hughes Aircraft Co.*, 992 F.2d 971, 975 (9th Cir. 1993), for the proposition that "removal could never be predicated upon speculation." Dkt. 35 at 13. However, *Karambelas* concerned a defendant who constructed grounds for removal through speculation and "clever questioning." *Id.* This included eliciting some facts suggestive of ERISA preemption at a deposition, and then removing the action. *Id.* The Ninth Circuit determined that the matter should have been remanded because no ERISA claim had ever been brought, and that if the plaintiff had attempted to do so, the claim would have been so weak as to be sanctionable. *Id.* at 974. Thus, to reward the defendant's attempt to generate preemption grounds would "require us to have a rather pertinacious desire to increase the jurisdictional reach of the federal courts." *Id.* at 975.

Here, by contrast, there is no showing that Boeing sought to invent the grounds for removal, or to force Plaintiff to provide them unwittingly. More instructive is *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 783 (9th Cir. 1994). In *Eyak*, defendant Aleyska had removed on the basis of a federal question as

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

to whether certain claims constituted a collateral attack on injunctions which had been obtained pursuant to federal statute. *Id.* at 782. Aleyska argued that, until it had received the plaintiff's preliminary designation of issues for trial, the claims giving rise to the federal question appeared to be advanced only against a co-defendant. *Id.* at 783. The Ninth Circuit disagreed, concluding that removal was untimely because Aleyska had taken much earlier actions that made clear that it "was aware of the nature of the plaintiffs' claims and their possible connection to *Chevron v. Hammond* [the case establishing the injunction] long before the removal notices were filed." *Id.* For example, eight months prior to removal, Alyeska itself sought discovery as to allegations relating to the federal question, and filed an answer in which it asserted a federal preemption defense. *Id.* "Although the defense of preemption does not support removal, the answer indicates that Alyeska was aware at that time of the nature of the plaintiffs' claims and their possible connection to *Chevron v. Hammond.*" *Id.*

The facts here are similar. Several months before removing the action, Boeing was served with documents that showed that Plaintiff's claim against it related to a period that began with Paul's military enlistment and ran throughout his term of service. They also showed that Plaintiff was alleging take-home asbestos exposure in a California city where she and Paul had lived more than once during that same military service. Boeing also had notice that Paul spent his military service working on certain identified models of Douglas aircraft, and that the laundering of his uniforms during that same period was an alleged source of Plaintiff's asbestos exposure. These allegations parallel those that the Ninth Circuit has said are sufficient to give notice to a defendant that there is both a causal nexus between the claims and a military contractor's actions under federal direction, and a colorable federal defense.[5] *Durham*, 445 F.3d at 1251 (where a claim was based on allegations of asbestos injury resulting from work on military aircraft, the second and third prongs of the federal officer removal statute were not satisfied "[u]ntil [the plaintiff] revealed which aircraft he had worked on," because an aircraft manufacturer "performs some activities on military bases that are protected by federal contractor immunity, and others that are not."). Additionally, as in *Eyak*, over a period of several months Boeing engaged in substantial discovery efforts as to the relationship between Plaintiff's claims against it and Paul's work as a Marine Corps airplane mechanic. It did so in part through the depositions of Plaintiff and her children.

Even assuming that a close question were presented as to Boeing's knowledge of sufficient facts to support removal prior to April 16, 2019, *Eyak* suggests that Boeing's answer to the Complaint -- which it filed on November 15, 2018 -- tips the balance. In its answer, Boeing stated that "any products manufactured by Boeing which incorporated asbestos-containing materials alleged to have been a cause of any disease contracted by Plaintiff were manufactured under and in conformity with the direction and control of the United States Government," which had "knowledge superior to that of Boeing with respect to the potential hazards of asbestos products," and "accordingly, no liability can be imposed." Dkt. 32-2 at 10. It also expressly invoked the colorable federal defenses required for removal. These included that "such claims are barred by the doctrine known as the 'Government Contractor Defense,' and "that Plaintiff's claims are barred by the derivative sovereign immunity defense doctrine." *Id.* Where "the plain language of . . . the answer is quite broad, and separate affirmative defenses asserted in the answer refer to [the removal grounds]," the argument that the

---

[5] The remaining element necessary for federal officer removal is that the party must be a person within the meaning of the statute; it is not disputed that Boeing is such a person. *See* Dkt. 32 at 13 ("Plaintiff will assume that Boeing is a 'person' under the federal officer removal statute.").

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

---

answering party was at the time *unaware* of the very grounds it was arguing is disingenuous at best. *Eyak*, 25 F.3d at 783.

Although both the grounds for removal pursuant to the federal officer removal statute and the commencement of the 30-day clock may be construed broadly, once "sufficient facts" to support removal have been provided by the plaintiff, the 30-day window itself "must be strictly complied with." *U.S. ex rel. Walker v. Gunn*, 511 F.2d 1024, 1026 (9th Cir. 1975). Ample facts sufficient to give Boeing grounds to remove this action were present by late 2018, and certainly prior to April 16, 2019. For these reasons, the removal on May 16, 2019 was untimely.

        2.    <u>Remand</u>

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). This case was removed on the basis of the federal officer removal statute, but where such a petition is untimely, the district court lacks jurisdiction to decide the merits of the case. *Walker*, 511 F.2d at 1027. Therefore, remand is warranted.

For the reasons stated in this Order, the Motion is **GRANTED** insofar as it seeks to remand this action to the Los Angeles Superior Court.

        3.    <u>Request for Fees</u>

Plaintiff seeks an award of the attorney's fees incurred in connection with the Motion. 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award of attorney's fees and expenses under § 1447(c) is appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). When an objectively reasonable basis for seeking removal exists, a request for attorney's fees under Section 1447(c) should be denied. *Id.* Where there is no objectively reasonable basis, however, "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

For the reasons stated above, removal here was not objectively reasonable. Plaintiff also states that she is suffering from a terminal illness, and that the removal was effected after substantial litigation in the Superior Court, and shortly before trial – for which Plaintiff had been granted a preference pursuant to Cal. Code Civ. Proc. § 36 -- was to have commenced. *See id.* at 6, 22.

Plaintiff's counsel declares that he has spent ten hours researching removal, drafting the Motion and preparing the supporting materials. Based on an hourly rate of $350, he seeks an award of $3500 in fees, inclusive of costs. Dkt. 32-1 at 2. Given the thousands of pages filed by Boeing in support of its removal, ten billable hours in response was reasonable. Moreover, in light of the Court's familiarity with hourly rates that are charged within this District, and the quality of the work product that was presented, an hourly rate of $350 is reasonable.

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-04291 JAK (PJWx) | Date | October 28, 2019 |
|---|---|---|---|
| Title | Connie Dietrich v. Autozone West, Inc., et al. | | |

Accordingly, the request for an award of attorney's fees and costs is **GRANTED**. Plaintiff is awarded $3500. That amount shall be paid within 30 days of the issuance of this Order.

### IV.    <u>Conclusion</u>

For the reasons stated in this Order, the Motion is **GRANTED** and the action is remanded to the Los Angeles Superior Court at its Stanley Mosk Courthouse, Case No. 18STCV00436.

**IT IS SO ORDERED**.

_____ : _____

Initials of Preparer    ak